afternoon please the court my name is Adrian Rowe and I'd like to reserve three minutes for rebuttal surely there are three undisputed facts pertinent to this appeal first appellant was a concentration camp guard secondly he was not a war criminal and third the Refugee Relief Act on August 23rd 1956 did he put on his application that he had been a concentration camp guard no one could if you get into that the record would be that it might be very obvious to people at the consulate that he was a concentration camp guard and he has not been accused of there arise at least three issues of first impression for this court to consider the first is is a State Department advisory opinion deeming a concentration camp guard eligible for an RRA visa that's a Refugee Relief Act visa entitled to Chevron deference in light of section 104 e of the Immigration and Nationality Act of 1952 as incorporated by reference in the RRA I'll be getting to that issue and the other issues in just a moment but I'd like to state the other issues first secondly is the Refugee Relief Act of 1953 structurally ambiguous for purposes of Chevron analysis and third as applied to a concentration camp guard who was not a war criminal is section 14a of the RRA ambiguous in light of this court's repeated decisions that the term persecution is ambiguous the first issue that I'd like to address is the application of section 104 e of the RRA as incorporated by reference excuse me section 104 e of the INA as incorporated by reference in the RRA to the appellate to our knowledge the appellate counsel's knowledge this is an West law do a search for the language of this statute 104 e of the are of the INA I don't come up with any other decisions that have construed this statute and that perhaps relates to the role of the State Department in consular processing the text why do you want to talk about that first until you convince us that there is an ambiguity in the statute that we should look at that because your honor part of the determining whether or not there is an ambiguity in the statute is to look at every aspect of this statute don't you look at the statute first you are looking at what Chevron step one tells you as you look at the statute first and you look at the plain reading plain meaning your honor I refer you to the court's decision in core communications versus Verizon at 483 fed third 333 page 338 this is addressing the manner of framework the first question we must answer is whether Congress is directly spoken to the precise question at issue in making this determination the Supreme Court has instructed the reviewing court should not confine itself to examine in particular statutory provision in isolation instead we must interpret the statute as a symmetrical and coherent regulatory scheme and fit if possible all all parts into an harmonious whole and that's exactly what I'm asking this court to do in this case the government wants us to focus on one sentence of the statute section 14a and and make decide the entire case on what that one sentence is that goes to your that goes to your argument on structural ambiguity it goes to both your honor because 104 if we have the incorporation by reference provisions of the RRA and there are three of them if those are allowed to have effect then that incorporates the entire immigration and nationality act including section 104 e and 104 e of the immigration and nationality act incorporated by reference here into the RRA reads and if I could just read a small excerpt from it quote the general counsel of the State Department visa office shall have authority to maintain liaison with the appropriate officers of the Foreign Service with a view to securing uniform interpretations of the and so the first point that I am emphasizing here the first argument to be considered is is this section 104 e incorporated by reference if it is when the State Department has the record indicates issues and advisory opinion stating that certain concentration camp guards are admissible under the RRA is that opinion under the express terms of the immigration and nationality act entitled to deference and we submit that that is that such an advisory opinion is pursuant to this express congressional charge to make uniform interpretations of the act and that triggers Chevron deference it's not a complete deference to the State Department to come up with any opinion at all of course because it's stage two of Chevron there would be an analysis of whether or not that opinion that interpretation was reasonable in light of the history of concentration camp guards and the history of all pertinent circumstances but what we're saying is that 104 e of the INA as incorporated in the RRA it leads takes us to Chevron step two the second issue which again I nationally is whether the RRA is structurally ambiguous and we've addressed this issue in our brief at some length and I've tried to demonstrate in that brief that there is ambiguity in the statute one day I'd like to just go back for a second on 104 e the court recently issued an opinion in Chen versus Attorney General 491 fed third 100 and at page 106 that opinion of Third Circuit 2007 I'll call this Chen to the court stated quote the court cited to section 103 a1 and that is I would suggest a parallel provision to 104 e except it deals with the domestic operation of the immigration laws as carried out by the Board of Immigration Appeals in the Department of Justice and in Chen to the court stated quote the BIA's interpretation of the INA made in the course of case-by-case adjudication therefore are entitled to Chevron deference so citing a parallel statute containing a various contained very similar wording this court has recently stated that deference is owed to the in Chen to the case was again the court again found the term persecution is ambiguous and the court expressed deference to the case-by-case adjudication of the Board of Immigration Appeals but isn't a decision by the Board of Immigration Appeals a very different thing than a State Department memo no your honor I don't believe that's correct the there is State Department advisory opinions then Board of Immigration Appeals decisions but the mechanisms that were in place are the type of mechanisms that we submit should be it would be entitled to deference under me and of course the district court never even got into the issue of whether need analysis whether the advisory opinion would survive need analysis we've cited material in our brief showing that an advisory opinion from the State Department was the the second legal statement of position for the State Department and of course I'm sure the court knows that the individuals on the field have no discretion to deviate from those positions so what you have is the policy is established in Washington it's set forth in an advisory opinion there's no judicial review of such advisory opinions or consular processing decisions so so no it's not any of a lesser animal than a BIA decision but we found the ambiguity of the term persecution in that case with respect to the class of persons that might qualify rather as to what as to what the term meant in terms of what constitutes persecution so I'm not so sure that helps you that much your honor I am I concede with both Chen one and Chen two taking the term persecution and at the court's determination that in one context the term persecution is ambiguous and applying it in a different context but then I don't you obviously have a knowledge of the opinion but my reading of Chen two is that consistent with Chen one there's a recognition that this term persecution calls for interpretive analysis by the agency the issue was not reached in Chen one because it's just stage one of interpretation so I conceded I just looking at Chen two now it appeared to me that the court actually did show deference to the BIA's interpretation of whether such a person would have been a victim of persecution back to you started to tell us why you thought the the RRA was structurally ambiguous the reason that it is structurally ambiguous your honor is that there are three potential ways of interpreting the statute one would be to adopt the government's interpretation section 14a is the only thing that matters the second would be to say that the RRA through the incorporation by reference provisions in brings in the standards of visa eligibility set forth in the INA if that's the case it's clear that mr. Geiser was eligible for a visa because in 1956 the State Department was granting visas to former concentration camp guards who were not war criminals and the third way it would be ambiguous is if you just look at the incorporation of section 104e of the INA you would say well the State Department has authority to go about developing these interpretations and that is a third way we could go here so there are three different ways in which three possible readings of the statute and given three possible readings you have ambiguity finally I'd like to focus on the ambiguity of section 14a and there of course I've set forth the argument as to the ambiguity as to the ambiguous nature of the term persecution but didn't mr. Geiser admit that the concentration camp for places of persecution that's really off the table isn't it you have to look at the term persecution from two points of view there was undoubtedly persecution in the form of murder occurring at the camp the question is whether in looking at the conduct of the specific individual before the court whether his conduct constituted doesn't that get to the question of personally assistance it both both terms are ambiguous and thus let's see what the State Department interpretation is I'm I will give you two more minutes thank you tell us give us your argument on the personally assist personally assisted is a question of whether again it adds another layer of ambiguity to the situation in that you look at this individual and ask did his conduct personally assist the persecution it requires a case-by-case adjudication it you could say that and and the question is did the State Department because apparently in the record the State Department reached a determination that persons who were not actually engaged in killings were eligible for RRA visas that suggests a reading that personally assist required something more than merely passively standing by as things occurred or standing by in a uniform that is an interpretation which is entitled to deference this is and I should just note there's a recent Seventh Circuit case that is somewhat notable it's called Doe vs. Gonzalez 484 Fed 3rd 445 Seventh Circuit 2007 and this is of course one of the courts that's gone the other way in the comp decision and Judge Posner in that case talks about some of these close questions and the ambiguous nature of some of this terminology assist presence and so on those are close questions and I submit it's an unsettled area where there's still room for further study here because of the need for case-by-case examination has this person personally done assisted what does assistance mean what level of persecution you could have an individual in an office at a camp who's engaged in persecution because he's here is checking off a list of names as opposed to somebody who's standing outside the camp against his will and is not you might say make a judgment call that that type of person outside the camp should not be deemed to be personally assisted. But if you don't have guards around the camp everyone might just walk out and go home. That's true but the State Department was given in this statute authority there were millions of people who were associated with the horrors of the Third Reich. The State Department was given authority. Millions? A very large number the army, the armies, the various people. We're talking about the Deathshead Squad. That is a very different situation than. I appreciate that your honor but if you the historical record here is that the Displaced Persons Commission and the United States Department of State was attempting to sort out over a period of years between people who had various degrees of the operation of the Nazi war machine. That was an ongoing effort. It's reflected in here and this is just another example of the distinctions that were drawn by the State Department people who studied these issues very closely and they by 1956 when my client happened to show up and apply for the visa they had at that point in time on the record before the court determined that guards who could not be characterized as war criminals should be rethinking the wisdom of that policy developed by the State Department 50 years ago and that rethinking is inconsistent with the Chevron doctrine and the Chevron doctrine is more important than a specific individual visa decision. Mr. Rowe thank you very much. We'll have you back on rebuttal. May it please the court my name is Christina Giffen on behalf of the Department of Justice. Your honors I do agree with one point my opposing counsel made just now and that is everybody agrees that the appellant in this case served as a concentration camp guard in Sachsenhausen and Buchenwald concentration camps. Everybody agrees that his duties were to serve armed at all times with orders to shoot any prisoner trying to escape Nazi persecution and as your honor pointed out all parties in this case agree that Sachsenhausen and Buchenwald were places of persecution. So the only issue before this court is whether or not appellants admitted conduct announced a personal assistance in the persecution that everybody agreed occurred in Nazi Germany. My opposing counsel raises a Chevron argument. It fails for two reasons. First the RRA is unambiguous as second even if you find that the RRA isn't is ambiguous even though every other court to assess this issue has found that it is unambiguous as applied to concentration camp guards but if this court just determines that it should proceed to Chevron step two there's simply no evidence in the record of a State Department or government policy to admit concentration camp guards as eligible for RRA visas. Let me address each point briefly in turn. Section 14 of plain and unambiguous as both the seventh and eighth circuits have held in every district court to examine this case. The appellant's actions in preventing in fulfilling his duties as a concentration camp guard preventing prisoners from escaping from Nazi persecution announced a personal assistance under a plain reading of the statute. Chevron teaches us that at the first step of Chevron analysis we look to the plain meaning plain text of the statute and try to determine whether or not we can determine the outcome of a case without reference to extraneous materials. In this case again as the seventh and eighth circuits have found you can. Appellant sites... But let me stop you at that point. In light of what the Supreme Court has said in the Brona-Williamson versus the FDA case and what we said in the Santiago case don't we also have to look at legislative history here? Your honor at step one it is not at all clear that we have to look at legislative history. In this case as in many other cases if you look to legislative history it doesn't help the appellant's case but there's nothing that says that you have to look to legislative history to reinforce although some cases have done so. But can we? Your honor this court has not said that you can or can't. There is a case I'm blanking on the name at the moment there's a case that indicates that it is possible but there's no case of which the government is aware which which states that you are required to do so and in this case even if you do so there's nothing in the legislative history which would go to support the idea that Congress intended that personal assistance and persecution should be limited to a smaller group of people. It doesn't look in it in this case doesn't doesn't looking at legislative history get you to the point that Mr. Rowe argued about the structural ambiguity of the RRA by virtue of the fact that the RRA incorporated the the INA and also the regulations under the INA and doesn't it beg the question as to which of the three need to be followed in a case like this and what was followed in 1956 what should be followed now? No your honor I don't believe it does the legislative history first of all it contains no discussion of the manner in which the appellant would have you read the statute that is there's no place in the legislative history where you find anyone in section 212 a 27 through 29 to determine the meaning of personally assistant persecution and as your honor may know the provision of the INA which appellant discusses again 212 a 27 28 and 29 at no point uses the critical language at issue in the RRA personally assistant persecution nothing in the legislative history or anywhere in this record indicates that they're supposed to be read as meaning the same thing the legislative history discusses things like there should be intense screening of individuals who are applying for RRA visas if you look at the record you'll see that that came up in the context of a concern about fraud applications that happened under the predecessor statute the DPA nothing about that discussion indicates that Congress intended to limit the plain meaning of the statute personally assistant persecution to only apply to war criminals doesn't the legislative history also show that Congress intended to delegate the decision as to who should be admitted to the State Department part of it in that part of what the structural ambiguity leads you to the legislative history does indicate that individuals in the field will be making decisions based on the applications before them of course that's always true in any administrative scheme we have people who are processing applications under the guidelines of Congress has given them that doesn't create an ambiguity that simply says here's the text of the statute you have to go out and apply it in section 104 E is essentially directing the Secretary of State make sure that everybody is applying this in the same way we want to make sure that someone who applies in Vienna and someone who applies in Salzburg have the same standards we're not working here on a clean slate we're not working on a new statute we're not looking at a new statute here we're looking at a statute that was enacted in the fifties and in 1956 somebody in or elsewhere working with the State Department made a decision to issue to mr. Geiser a visa correct your honor they got it wrong well okay essentially but what the appellant is trying to the pound is trying to create an ambiguity where none exists and then back during his way into consideration of the fact of the admission of a small handful of cases you said they got it wrong or did they get it right on the information they had or did they get it right without doing sufficient investigation do we know is there any way we can know as to the appellant in this case the investigative file is missing for him so we don't know that there was an indication in his file that he was a concentration camp guard as your honor pointed out earlier it's not listed on his RRA application so we cannot say for sure whether or not it was revealed in the context of the 10 to 15 minute interviews that they were doing in the context of misrepresentation that's correct your honor that's not part of that's not part of this case that is correct your honor because the investigative file was missing we we had no basis on this take us back I had you talking about 1956 and the the question what mr. Rowe wants us to do is find an ambiguity either in personally assisted or in the structure of the statute to get us back to the fact that Congress wanted somebody to look at these cases on a case-by-case basis okay that that's what he's trying to argue yes and if he's correct in that that you look at these cases on a case-by-case basis you obviously one of the things that's it's admitted by both sides is that he was granted a visa and under some set of circumstances that visa was granted in 1956 and why should the government have an opportunity for a redo in 19 2004 when you filed this complaint and today when when at least the State Department's actions in 56 mr. Geiser argues was consistent with what Congress wanted well there's no evidence that that's what Congress wanted your honor and I would add that case-by-case adjudication does not create an ambiguity every statute will have someone in the field assessing an applicant or assessing its application that doesn't mean that when a case comes before court there's necessarily an ambiguity importantly in this record there is nothing that says that we are going to interpret the RRA to mean that only war criminals are barred from receiving RRA visas everyone else who may have been who could be argued to participate in persecution we're not going to count them unless they was a war criminal there's just no piece of paper that says that the fact of a small handful of admissions is the only thing in the record to go for this idea and there's just nothing behind it to support at the Chevron step to analysis that that policy or interpretation even existed there's no other piece of paper that indicates that the INA section 212 a 27 through 29 was meant to reflect on the meaning of the RRA which used an entirely different language it's as if the appellant pulled out the INA provision that says polygamists are barred under the INA and said well you know let's look at the polygamy statute under the INA to see whether or not I'm admissible under the RRA there's just no parallel between the statute that he's citing in the regulations that support that which are the ones that discuss war criminal to say that that's what we wanted the RRA to mean as well there's just nothing to support the idea the Chappell memorandum does not refer to war criminals doesn't your honor I believe that is correct I know that the Chappell memorandum does not refer to the RRA or to persecution or to personally assist in persecution but it does seem to refer to making individual assessments irrespective of whether somebody's a war criminal under the INA your honor the the Chappell memorandum as you'll see in the subject line refers to INA assessments yes but in your view that has no relevance to this the Chappell memorandum has no relevance to the interpretation of the RRA it doesn't use any of the of the same terms that are at issue in this case not that it's part of this case but if you know how many of these denaturalization complaints since the Justice Department found you mean with regard to Nazi era yes naturalizations I would I'd like to I believe it's in excess of 100 between 80 and 100 your honor I'm guessing and I would like to have a chance to confer with my office to verify those numbers before anyone relies on them but I you're comfortable with them yes so your honor let me return to the ambiguity discussion and briefly touch on Chen the biggest reason why Chen is inapplicable here is because as your honors have already noted persecution isn't an issue in this case we don't have to determine the meaning of the word persecution to determine how to decide this case and I would go on to note that Chen also noted that there is a normal understanding of the word persecution we know that because not every asylum case is a Chevron case there are normal understandings of these words that operate in the bulk of cases that come before courts or other decision-makers just because the term persecution might have been ambiguous in the context of the Chen case to the extent that that case was at the margins of what the asylum statute was meant to mean and as applied to the facts of that case does not mean that a Nazi concentration camp guard didn't participate personally assist in the persecution that he admits occurred similarly the arguments that the appellant raises with respect to the structure of the INA don't get him any further the fact that the RRA was meant to work in concert with the INA doesn't create an ambiguity in the RRA the INA as this panel is well aware is a large and complicated statute meant to apply to a number of different ideas of why someone might not might not be admissible to the United States the fact that the RRA meant to incorporate the INA is simply to say the RRA is emergency litigant emergency legislation which is meant to cover the fact that we're issuing 300,000 visas it is not meant to replace the INA the INA stays in place all of its provisions stay in place you still can't come to the United States if you're a polygamist if you're a drug dealer if you're any number of things that we've decided we will issue bars for those are still in place and that's what the incorporation provisions that the appellant cites to were meant to refer to you have to meet the provisions of the RRA in order to get an RRA visa and then you have to meet the provisions of the INA in order to come to the United States the appellant at step 2 of Chevron cites a number of materials which as we've laid out in our brief we believe is irrelevant as your honors know at Chevron step 2 this court's analysis is to determine whether or not a government policy or government interpretation of a statute is reasonable in light of the text of the statute there is no evidence in this record that the State Department or any other branch of the US government decided that the RRA was going to mean that war criminals are admissible we can't really do a Chevron step 2 analysis here can they don't we have to send this back to the district court if we think that such an analysis needs to be done your honor you can remand to the district court we would argue that it would not be necessary the record won't change in the district court and since this is a de novo review this court is as well situated to decide that issue on the on the record as agreed before this court as the district court is so we would argue you can decide it here if you would prefer so your honor what I thought you were going to say was we there's no policy to assess which is the critical point at Chevron step 2 the appellate is trying to create the idea that a policy existed by the fact of a small number of applications that were granted erroneously in the context of several hundred thousand that were applications that were processed during the three-year life of this statute that's just not enough to amount to the kind of policy to which we give deference under mead and its progeny and your honor I can I can go through the other materials that we believe are irrelevant if you like I believe we've set those out sufficiently in our brief with the exception of one small matter which is a the so-called advisory opinion which the appellate discussed importantly let me reiterate the advisory opinion at issue is not in this record because no party was able to locate it the only evidence that it ever actually existed is the memory of an individual who believes he thinks he got it there are two interviews with this individual one in the 1980s and one again in 2004 not surprisingly that individual's memory faded over time he had even less recollection of it when we interviewed him in 2004 than he did at first I see my time you can finish it thank you your honor the advisory opinion simply isn't in the record that's important for several reasons first of all advisory opinions were not meant to be sweeping policy statements advisory opinions were issued with the people in the field couldn't make a decision they sent the facts back to Washington Washington would give a decision about whether that person was admissible so it's not clear that even if the advisory opinion was in the record that that would be something to which this court should give deference even if it was something to which this court should give deference it's not in the record we have no proof of what it actually said we have the recollection that it possibly existed of one individual and that's just not something to which this court should give Chevron deference thank you your 56 is when I joined the Foreign Service of the Department of State but they sent me to Tehran so I can offer you no insight we'll keep that in mind for future cases here thank you may please the court and there was argument to the effect that there was no the court for example to page 1427 of the record there we have a visa application approved visa application that I'm not going to identify the person's name because it's under seal but on the face of this visa application it says that this individual had been refused by the Stuttgart consulate in 1950 on the grounds that he was a concentration camp guard and so here we have a few years later 19 I think this is 55 I'm not sure 56 he's being granted this visa and it's it's on the face this isn't something that slipped through and note that it's on the face when signed by both a State Department official in Europe and a Justice Department official in New York so we have some evidence certainly a lot of evidence has been destroyed over over the passage of time but there's a lot of evidence that this was not some mistake that a few people slipped in I'd also refer the court to appendix at page 1418 as an example of one of the investigations that was performed by the US intelligence agencies into the background of other guards and here we have an individual who was identified as having been a guard at a concentration camp they had noted prisoners at the camp had been questioned this person had never mistreated the subjects that had never mistreated the individuals in these camps and he was thereafter given an RRA visa so full investigation open file I think you'll also see in the record that there were individuals who on interview did not admit to being a concentration camp guard were discovered to have been a concentration camp guard but were found to have been persons who did not were not war criminals and they were granted visas. Chief Judge Chirica you referenced the Chappell memorandum actually that does reference the issue of war criminals it cites to 22 CFR 4242 J which is one of these INA regulations that we say are incorporated by reference in the RRA. As to the issue of fairly recently in the case of NAPIC versus Ashcroft at 384 Fed 3rd 84 page 88 note 3rd noted that legislative history should be considered at step 1 of Chevron analysis we would submit that the legislative history here is very helpful to appellant the comments of the author of this bill chairman Watkins as well as the director of the immigration and nationalization service are completely consistent with the position being taken by appellant and finally if I might as to the advisory opinions the one advisory opinion for Mr. Clemson is not the only evidence in the record but it is the most directly it's a very forceful piece of evidence and under the best evidence rule we submitted admissible because the underlying document has been destroyed thank you very much. Any other questions? Mr. Rowe thank you very much case was very well argued by both sides. Appreciate it Aaron. We'll take the case under advisement. Thank you.